# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Janine Wenzig and Catherine Kioussis et al., | ) ) ) | |
| | ) | No. 1:19-cv-1367-MEM |
| Plaintiffs, | ) | |
| | ) | **OPPOSITION TO** |
| v. | ) | **DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| Service Employees International Union, Local 668, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................................1

STATEMENT OF QUESTIONS INVOLVED......................................................2

ARGUMENT ....................................................................................................2

I.   The Union does not have a good faith defense against paying back agency fees that were unconstitutionally taken from Plaintiffs in violation of the First Amendment. ..............................................................................................2

   A.   A good faith defense conflicts with the text of Section 1983. ..................3

   B.   A good faith defense is incompatible with the statutory basis for qualified immunity, and SEIU lacks that immunity...........................................5

   C.   Fairness and equality do not justify a statutory reliance defense. ............7

   D.   Recognizing a universal good faith defense to Section 1983 will undermine the statute's remedial purposes. ......................................................11

   E.   A statutory reliance defense is incompatible with retroactivity principles under *Reynoldsville Casket*. ..............................................................12

II.   The circuit courts that have recognized a good faith defense to Section 1983 claims do not support SEIU's argument. ...................................................13

   A.   *Wyatt* and several circuit courts found malice and lack of probable cause to be elements of certain Section 1983 claims not at issue here.......................13

   B.   Malice and lack of probable cause are not elements of or defenses to a First Amendment compelled speech violation..............................................20

III.   In the alternative, a good faith defense does not shield SEIU from returning the monies it unconstitutionally seized from Plaintiffs......................................22

CONCLUSION ................................................................................................26

# TABLE OF AUTHORITIES

*Anderson v. Myers*,
  238 U.S. 368 (1915) ........................................................................ 6

*Carey v. Inslee*,
  364 F. Supp. 3d 1220 (W.D. Wash. 2019) ..................................... 21

*Crawford-El v. Britton*,
  523 U.S. 574 (1998) ...................................................................... 11

*Crockett v. NEA-Alaska*,
  367 F. Supp. 3d 996 (D. Alaska 2019) .......................................... 21

*Daniels v. Williams*,
  474 U.S. 327 ................................................................................... 4

*Duncan v. Peck*,
  844 F.2d 1261 (6th Cir. 1988) ................................................. 15, 19

*Filarsky v. Delia*,
  566 U.S. 377 (2012) ................................................................... 6, 10

*Guidry v. Sheet Metal Workers Nat. Pension Fund*,
  493 U.S. 365 (1990) ........................................................................ 7

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ........................................................................ 7

*Harper v. Va. Dep't of Taxation*,
  509 U.S. 86 (1993) .................................................................... 12, 23

*Janus v. AFSCME Council 31*,
  138 S. Ct. 2448 (2018) ............................................................ 1, 21, 22

*Janus v. AFSCME Council 31*,
  No. 19-1553, 2019 U.S. App. LEXIS 33071 (7th Cir. Nov. 5, 2019) ............. 20

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
  20 F.3d 1250 (3d Cir. 1994) ...................................... 1-2, 18, 19, 25

*Little v. Barreme*,
  6 U.S. (2 Cranch) 170 (1804) ......................................................... 6

*Lugar v. Edmondson Oil Co.*,
457 U. S. 922 (1982) ......................................................................... 13

*Malley v. Briggs*,
475 U.S. 335 (1986) ........................................................................... 5

*Mooney v. Illinois Edu. Ass'n*,
372 F. Supp. 3d 690 (C.D. Ill. 2019) ............................................... 10

*Morisette v. United States*,
342 U.S. 246 (1952) ......................................................................... 22

*Neely v. United States*,
546 F.2d 1059 (3d Cir. 1976) ...................................................... 23-24

*Clement v. City of Glendale*
518 F.3d 1090 (9th Cir. 2008) ......................................................... 18

*Laspina v. SEIU Pa. State Council*
No. 3:18-2018, 2019 U.S. Dist. LEXIS 147506 (M.D. Pa. Aug. 29, 2019) ..... 25

*OSU Student Alliance v. Ray*,
699 F.3d 1053 (9th Cir. 2012) ............................................. 15, 20, 22

*Owen v. City of Indep.*,
445 U.S. 622 (1980) ................................................. 3, 6, 8, 9, 10, 11

*Pasha v. United States*,
484 F.2d 630 (7th Cir. 1973) ........................................................... 23

*Pinsky v. Duncan*,
79 F.3d 306 (2d Cir. 1996) ................................................... 18, 19, 25

*Rehberg v. Paulk*,
566 U.S. 356 (2012) ................................................................ 3, 5, 6, 21

*Reynoldsville Casket Co. v. Hyde*,
514 U.S. 749 (1995) .................................................................. 12, 13

*Richardson v. McKnight*,
521 U.S. 399 (1997) ............................................................. 5, 15, 17

*Ross v. Blake*,
136 S. Ct. 1850 (2016) ...................................................................... 3

*Tenn. Valley Auth. v. Hill*,
   437 U.S. 153 (1978) ........................................................................ 7-8

*Tower v. Glover*,
   467 U.S. 914 (1984) ........................................................................... 8

*United States v. Lewis*,
   342 F. Supp. 833 (E.D. La. 1972) .................................................... 24

*United States v. Lewis*,
   478 F.2d 835 (5th Cir. 1973) ........................................................... 23

*United States v. Windsor*,
   570 U.S. 744 (2013) ........................................................................ 12

*Vector Research, Inc. v. Howard & Howard Attorneys P.C.*,
   76 F.3d 692 (6th Cir. 1996) ....................................................... 18, 19

*Wyatt v. Cole*,
   504 U.S. 158 (1992) ...................................... 1, 10, 14, 15, 16, 17, 19

## Statutes

42 U.S.C. § 1983 ............................................................... *passim*

## Other Authorities

William Baude, *Is Qualified Immunity Unlawful?,* 106 Cal. L. Rev. 45 (2018)...... 6

Richard A. Epstein, *Torts*
   §1.12.1 (1999) ................................................................................ 22

# INTRODUCTION

Plaintiffs are Commonwealth of Pennsylvania employees who were compelled to pay agency fees under color of state law to Defendant Service Employees International Union, Local 668 ("SEIU" or "the Union"). SEIU admits that deducting agency fees from the wages of Plaintiffs and the absent class members they seek to represent is unconstitutional under *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018). Def. Mem. in Supp. of Mot. to Dismiss at 3 (Dkt. 19) ("MTD"). SEIU argues that, while it unconstitutionally took Plaintiffs' money, it should, nonetheless, be allowed to keep their money because it relied on Pennsylvania's agency fee statute.

Relying on a state statute is not a defense to Section 1983. Reliance on a statute is an element of Section 1983, which states "every person who, *under color of any statute*" deprives others of their constitutional rights "shall be liable to the party injured in an action at law . . ." (emphasis added). It would turn Section 1983 on its head to hold that a defendant acting "under color of any statute" renders it *not* "liable to the party injured in an action at law." Neither the Supreme Court nor Third Circuit has construed Section 1983 in such a backward manner. Rather, those courts found that good faith reliance on a statute could only defeat the malice and probable cause elements of claims for abuses of judicial processes. *See Wyatt v. Cole*, 504 U.S. 158, 167 n.24 (1992); *Jordan v. Fox, Rothschild, O'Brien &*

1

*Frankel*, 20 F.3d 1250, 1276–77 (3d Cir. 1994).

The statutory reliance defense that SEIU seeks conflicts with the text, history, policy, and governing precedent of Section 1983. This Court should decline to recognize such a defense and should grant Plaintiffs their chance to seek the return of the money unconstitutionally taken from them.

## STATEMENT OF QUESTIONS INVOLVED

1. Does Section 1983 allow a good faith defense to damages liability for the unconstitutional deprivation of property in violation of First Amendment Rights?

    Suggested Answer: No

2. If such a defense were to be recognized by this Court, is such a defense available to SEIU in this case?

    Suggested Answer: No

## ARGUMENT

**I.     The Union does not have a good faith defense against paying back agency fees that were unconstitutionally taken from Plaintiffs in violation of the First Amendment.**

Acting pursuant to a state statute is not a blanket defense to Section 1983 liability. The ostensible defense is: (1) incompatible with the statute's text, which mandates "that "every person" who deprives others of their constitutional rights "shall

be liable to the party injured in an action at law . . ." 42 U.S.C § 1983; (2) incompatible with the statutory basis for immunities and SEIU's lack of an immunity; (3) incompatible with "[e]lemental notions of fairness [that] dictate that one who causes a loss should bear the loss." *Owen v. City of Indep.*, 445 U.S. 622, 654 (1980); and (4) incompatible with Section 1983's remedial purposes.

## A.     A good faith defense conflicts with the text of Section 1983.

"Statutory interpretation . . . begins with the text." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1983 means what it says: "[u]nder the terms of the statute, '[e]very person who acts under color of state law to deprive another of a constitutional right [is] answerable to that person in a suit for damages.'" *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)).

A good faith defense to Section 1983 cannot be reconciled with the statute's

mandate that "every person"—not some persons, but "every person"—who deprives a party of constitutional rights under color of law "shall be liable to the party injured in an action at law . . ." The term "shall" is not a permissive term, but a mandatory one. SIEU does not dispute in their motion that they acted under color of state law. *See* MTD at 6, 8. The statute's plain language requires that SEIU be held liable to Plaintiffs for damages.

The proposition that a defendant's good faith reliance on a state statute exempts it from Section 1983 damages liability has no basis whatsoever in Section 1983's text. In fact, the proposition conflicts with the statute in at least two ways.

First, Section 1983 "contains no independent state-of-mind requirement." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). A good faith defense would require penciling into Section 1983 a state-of-mind requirement absent from its text, in defiance of *Daniels*.

Second, an element of Section 1983 is that a defendant must act "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. Consequently, a defendant acting under a state statute cannot also be a defense to Section 1983. That would render the statute self-defeating: any defendant that acted "under color of any statute," as Section 1983 requires, would be shielded from liability because it acted under color of a state statute.

In other words, a good faith defense based on statutory reliance renders a statutory *element* of Section 1983 to be a *defense* to Section 1983. There is little to no difference between a defendant acting "under color of any statute," 42 U.S.C. § 1983, and a defendant relying on a "presumptively valid state law." MTD at 8. That SEIU acted "under color" of Pennsylvania's agency fee law when it deprived Plaintiffs of their constitutional rights is not exculpatory but a reason why SEIU is liable under Section 1983.

## B.     A good faith defense is incompatible with the statutory basis for qualified immunity, and SEIU lacks that immunity.

Section 1983 "on its face does not provide for any immunities." *Malley v. Briggs*, 475 U.S. 335, 342 (1986). Thus, courts can "not simply make [their] own judgment about the need for immunity" and "do not have a license to create immunities based solely on our view of sound policy." *Rehberg*, 566 U.S. at 363. Rather, courts only can "accord[] immunity where a 'tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine'" when it enacted Section 1983. *Richardson v. McKnight*, 521 U.S. 399, 403 (1997) (quoting *Wyatt v. Cole*, 504 U.S. 158, 164–65 (1992)). These policy reasons are "avoid[ing] 'unwarranted timidity' in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the

harmful distractions from carrying out the work of government that can often ac-company damages suits." *Filarsky v. Delia*, 566 U.S. 377, 389–90 (2012) (citing *Richardson*, 521 U.S. at 409–11). Defendants are not entitled to qualified immun-ity to Section 1983 damages claims unless these exacting strictures are satisfied. *See, e.g., Owen*, 445 U.S. at 657 (holding municipalities lack qualified immunity).

Qualified immunity law demonstrates that exemptions to Section 1983 liability are not created out of whole cloth. Immunities are based on the statutory interpreta-tion that Section 1983 did not abrogate entrenched, pre-existing immunities. *See Filarsky*, 566 U.S. at 389–90. In contrast, no interpretation of Section 1983's statu-tory language, or its legislative history,[1] supports a statutory reliance defense.

SEIU's statutory-reliance defense is premised on nothing more than misguided notions of equity and fairness. MTD at 8. Given that courts "do not have a license to create immunities based on [their] view[s] of sound policy," *Rehberg*, 566 U.S. at 363, it follows that courts do not have license to create equivalent defenses to Section 1983 liability on mere policy grounds.

---

[1] Unlike with recognized immunities, there is no common law history prior to 1871 of private parties enjoying a good faith defense to constitutional claims. As one scholar recently noted: "[t]here was no well-established, good-faith defense in suits about constitutional violations when Section 1983 was enacted, nor in Section 1983 suits early after its enactment." William Baude, *Is Qualified Immunity Unlaw-ful?,* 106 Cal. L. Rev. 45, 49 (2018); *see Little v. Barreme*, 6 U.S. (2 Cranch) 170, 179 (1804) (Justice Marshall rejecting a good faith defense: "the instructions cannot . . . legalize an act which without those instructions would have been a plain tres-pass."); *Anderson v. Myers*, 238 U.S. 368, 378 (1915) (rejecting good faith defense).

It is also anomalous to grant defendants that lack qualified immunity the functional equivalent of immunity under the guise of a "defense," as it renders the qualified immunity analysis almost superfluous. Yet that is what the Union seeks here. Qualified immunity bars a damages claim against an individual if, as an objective matter, his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). That accurately describes the defense SEIU seeks here.

While there are procedural differences between immunity and a defense, the bottom line to both is that they absolve defendants from having to compensate the victims of their constitutional deprivations. It makes no sense to grant defendants, who are not entitled to qualified immunity to Section 1983 damages liability, an equivalent defense to damages liability.

### C. Fairness and equality do not justify a statutory reliance defense.

"As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text." *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 376 (1990). "[I]n our constitutional system[,] the commitment to the separation of powers is too fundamental for [courts] to pre-empt congressional action by judicially decreeing what accords with 'common sense and the public weal.'" *Tenn. Valley Auth. v. Hill*, 437

U.S. 153, 195 (1978).

Here, Congress mandated in Section 1983 that "every person who, under color of any statute" deprives others of their constitutional rights "shall be liable to the party injured in an action at law. . . " Courts cannot refuse to enforce this statutory command against defendants who acted pursuant to then-valid statutes because it would supposedly be unfair to those defendants. "It is for Congress to determine whether § 1983 litigation has become too burdensome . . . and if so, what remedial action is appropriate." *Tower v. Glover*, 467 U.S. 914, 922-23 (1984).

In any case, fairness favors enforcing Section 1983 as written. It is not fair to deny victims of constitutional deprivations relief for their injuries. Nor is it fair to let wrongdoers keep ill-gotten gains. Plaintiffs and similarly situated employees should not have to pay for SEIU's unconstitutional conduct. "[E]lemental notions of fairness dictate that one who causes a loss should bear the loss." *Owen*, 445 U.S. at 654.

The Supreme Court in *Owen* wrote those words when holding municipalities are not entitled to a good-faith immunity to Section 1983. The Court's two equitable justifications for so holding are equally applicable here.

First, the *Owen* Court reasoned that "many victims of municipal malfeasance would be left remediless if the city were also allowed to assert a good faith de-

fense," and that "[u]nless countervailing considerations counsel otherwise, the injustice of such a result should not be tolerated." *Id*. at 651. That injustice also should not be tolerated here.

Countless victims of constitutional deprivations will be left remediless if defendants to Section 1983 suits can escape liability by showing they had a good faith, but mistaken, belief their conduct was lawful. Those victims include not just Plaintiffs and other employees who had agency fees seized from them. Under the Union's argument, every defendant to every Section 1983 damages claim can assert a good faith defense. For example, the municipalities that the Supreme Court in *Owen* held not to be entitled to a good faith immunity could raise an equivalent good faith defense, leading to the very injustice the Court sought to avoid.

Second, the *Owen* Court further recognized that Section "1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well." 445 U.S. at 651. "The knowledge that a municipality will be liable for all of its injurious conduct, *whether committed in good faith or not*, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights." *Id*. at 651–52 (emphasis added). The same rationale weighs against a good-faith defense to Section 1983.

Finally, the *Owen* Court held that "even where some constitutional development

could not have been foreseen by municipal officials, it is fairer to allocate the re-sulting loss" to the entity that caused the harm rather "than to allow its impact to be felt solely by those whose rights, albeit newly recognized, have been violated." 445 U.S. at 654. So too here, when Plaintiffs' and SEIU's interests are weighed to-gether, the balance of equities overwhelmingly favors requiring SEIU to return to Plaintiffs the monies it unconstitutionally seized from them.

SEIU argues that it would be unequal and unfair to hold private actors liable for damages that state actors avoid because of qualified immunity. MTD at 8.[2] It is not unfair, however, because public servants enjoy qualified immunity for reasons not applicable to SEIU and most other private entities: to ensure that the threat of per-sonal liability does not dissuade individuals from acting as public servants. *See Wyatt*, 504 U.S. at 168. If those interests apply to private persons, they are entitled to immunity. *See Filarsky*, 566 U.S. at 389–90. Thus, "[f]airness alone is not . . . a sufficient reason for the immunity defense, and thus does not justify its extension

---

[2] SEIU cites a string of district court decisions holding that a statutory reliance de-fense shields unions from having to compensate victims of their agency fee seizures. MTD at 5 n.4. What these decisions have in common is that they do not identify any basis in Section 1983's text for the ostensible defense. The few decisions that cite any rationale for the defense cite to the equitable one already refuted here: that equal-ity and fairness to defendants justify it. *See, e.g., Mooney v. Illinois Edu. Ass'n*, 372 F. Supp. 3d 690, 699 (C.D. Ill. 2019). These district court decisions have little to no persuasive value on the question before this Court: is relying on state statute a de-fense to Section 1983 liability?

to private parties." *Crawford-El v. Britton*, 523 U.S. 574, 590 n.13 (1998).

Moreover, a large organization like SEIU is nothing like individual persons who enjoy qualified immunity. SEIU is most akin to governmental bodies that lack qualified immunity, namely municipalities. "It hardly seems unjust to require a municipal defendant which has violated a citizen's constitutional rights to compensate him for the injury suffered thereby." *Owen*, 445 U.S. at 654. Nor is it unjust to require other organizations to compensate citizens for violating their constitutional rights.

**D.    Recognizing a universal good faith defense to Section 1983 will undermine the statute's remedial purposes.**

The Court should pause to consider the implications of recognizing SEIU's sweeping defense. Under SEIU's rationale, any defendant that deprives any person of any constitutional right can escape damages liability if it relied on existing law.

This ostensible defense would be available not just to unions but to all defendants sued for damages under Section 1983. Of course, individuals with qualified immunity would have little reason to raise the defense, since their immunity is similar. But defendants who lack immunity, such as private parties and municipal governments, would gain the functional equivalent of a qualified immunity.

These defendants could raise a statutory reliance defense not just to First Amendment compelled-speech claims but against any constitutional or statutory

11

claim brought under Section 1983 for damages. This includes claims alleging discrimination based on race, sex, or political affiliation. *See, e.g., United States v. Windsor,* 570 U.S. 744, 753 (2013) (discussed in Section III below). Allowing such a broad defense would render Section 1983 self-defeating.

### E. A statutory reliance defense is incompatible with retroactivity principles under *Reynoldsville Casket*.

The Supreme Court's decision in *Janus* is retroactive under *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) and *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752 (1995). *Reynoldsville Casket* concerned an Ohio statute that granted plaintiffs a longer statute of limitations for suing out-of-state defendants. 514 U.S. at 751. The Supreme Court held the statute unconstitutional in an earlier decision. *Id*. Like other Supreme Court decisions, the ruling was retroactive. *Id*. at 752. An Ohio state court, however, permitted a plaintiff to proceed with a lawsuit under the statute. *Id*. at 751-52. The plaintiff asserted this was a permissible equitable remedy due to her reliance on the then-valid statute—i.e., that it was a "state law 'equitable' device [based] on reasons of reliance and fairness." *Id*. at 753. The Supreme Court held the state court could not do an end run around retroactivity by fashioning a remedy based on a party's reliance on a statute later held to be invalid. *Id*. at 759.

SEIU seeks just such a remedy in this case: an equitable defense predicated on its reliance on a Pennsylvania statute later deemed unconstitutional by the Supreme

Court. This type of statutory reliance defense is incognizable under *Reynoldsville Casket*. *Id*. at 759. Under both *Harper* and *Reynoldsville Casket*, the Union has no basis to keep the monies it seized from Plaintiffs' wages before the Supreme Court put an end to this unconstitutional practice.

## II.   The circuit courts that have recognized a good faith defense to Section 1983 claims do not support SEIU's argument.

### A.   *Wyatt* and several circuit courts found malice and lack of probable cause to be elements of certain Section 1983 claims not at issue here.

Neither the Third Circuit Court of Appeals nor the Supreme Court have ever upheld dismissing a private defendant from a Section 1983 claim based on a good faith defense. Instead, Defendant's argument for a good faith defense relies on piecing together three different opinions in the *Wyatt* case, which it claims amounts to a holding that none of the opinions held. *See* MTD at 6. SEIU ignores the clear pronouncement of the *Wyatt* majority: private litigants in Section 1983 cases are *not* afforded qualified immunity and the Court did *not* decide whether good faith could be used as an affirmative defense:

> The precise issue encompassed in this question, and the only issue decided by the lower courts, is whether qualified immunity, as enunciated in *Harlow*, is available for private defendants faced with § 1983 liability for invoking a state replevin, garnishment, or attachment statute. That answer is no. In so holding, however, we do not foreclose the possibility that private defendants faced with § 1983 liability under *Lugar v. Edmondson Oil Co.*, 457 U. S. 922 (1982), could be entitled to an affirmative defense based on good faith and/or probable cause or that § 1983 suits against private, rather than governmental, parties could require plaintiffs to carry additional burdens.

*Wyatt*, 504 U.S. at 168-169.

The concurring and dissenting opinions in *Wyatt* also did not suggest that good faith reliance on a statute is a defense to *all* Section 1983 damages claims. Rather, the opinions suggested that good faith reliance on a statute is available only to defeat the malice and probable cause elements of abuses of judicial process claims. *See id.* at 167 n.2 (majority opinion); *id.* at 172 (Kennedy, J., concurring); *id.* at 176 (Rehnquist, C.J., dissenting). As Chief Justice Rehnquist observed: "[r]eferring to the defendant as having a good-faith defense is a useful shorthand for capturing plaintiff's burden and the related notion that a defendant could avoid liability by establishing either a lack of malice or the presence of probable cause." 504 U.S. at 176 n.1 (Rehnquist, C.J., dissenting).

Section 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The elements and defenses material to different constitutional and statutory deprivations vary considerably. For example, the elements of a Fourteenth Amendment due-process deprivation are different from those of a Fourth Amendment search and seizure violation. Most importantly here, state of mind is material to some constitutional deprivations but not others. For instance, a specific intent is required in "due process claims for injuries caused by a high-speed chase," "Eighth Amendment claims for injuries suffered during the response to a prison disturbance," and

invidious discrimination claims under the Equal Protection clauses. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1074 (9th Cir. 2012). In contrast, "free speech violations [like the one in this case] do not require specific intent." *Id.*

The Sixth Circuit was the first appellate court to find that private parties can raise a "common law good faith defense to malicious prosecution and wrongful attachment cases" brought under Section 1983. *Duncan v. Peck*, 844 F.2d 1261, 1267 (6th Cir. 1988). "While probable cause and malice often have complicated meanings," *id.*, these elements are generally not present if a defendant instituted a judicial process in good faith reliance on existing law. *See id.*; *Wyatt*, 504 U.S. at 172-74 (Kennedy. J., concurring); *Richardson v. McKnight*, 521 U.S. 399, 403 (1997).

At the time, *Duncan's* holding conflicted with other appellate decisions holding that private parties enjoy good-faith immunity to Section 1983 liability. *See id.* at 1265.[3] The Sixth Circuit in *Duncan* believed that "courts who endorsed the concept of good faith immunity for private individuals improperly confused good faith immunity with a good faith defense." 844 F.2d at 1266.

In 1992, the Supreme Court in *Wyatt* found that private parties seldom enjoy

---

[3] A "defense" and an "immunity" differ in that "a defense rebuts the alleged deprivation of rights, while an immunity is an exemption from Section 1983 liability, even if there is a deprivation. *Richardson*, 521 U.S. at 403 (quoting *Wyatt*, 504 U.S. at 171-72 (Kennedy, J., concurring)).

good-faith immunity to Section 1983 liability. 504 U.S. at 161, 168. *Wyatt* involved constitutional claims analogous to "malicious prosecution and abuse of process." *Id.* at 164. The Court recognized that, at common law, "private defendants could defeat a malicious prosecution or abuse of process action if they acted without malice and with probable cause." *Id*. at 164–65; *see id*. at 172–73 (Kennedy. J., concurring) (similar). Justice Kennedy further explained that "if the plaintiff could prove subjective bad faith on the part of the defendant, he had gone far towards proving both malice and lack of probable cause." *Id*. at 173 (Kennedy. J., concurring). Indeed, often "lack of probable cause can *only* be shown through proof of subjective bad faith." *Id*. at 174 (emphasis in original) (citing *Birdsall v. Smith*, 122 N.W. 626 (Mich. 1909) (holding that a plaintiff alleging malicious prosecution failed to prove the prosecution lacked probable cause)).

The *Wyatt* Court determined that "[e]ven if there were sufficient common law support to conclude that respondents . . . should be entitled to a good faith defense, that would still not entitle them to what they sought and obtained in the courts below: the qualified immunity from suit accorded government officials . . . ." *Id*. at 165. The reason was, the "rationales mandating qualified immunity for public officials are not applicable to private parties." *Id*. at 167.

*Wyatt* left open the question of whether the defendants could raise "an affirma-

tive defense based on good faith and/or probable cause." *Id*. at 168–69. As the Supreme Court later explained in *Richardson*, "*Wyatt* explicitly stated that it did not decide whether or not the private defendants before it might assert, not immunity, but a special 'good-faith' defense." 521 U.S. at 413. The Court in *Richardson*, "[l]ike the Court in *Wyatt*," also "[did] not express a view on this last-mentioned question." *Id*. at 414. The Supreme Court has yet to resolve the question.

On remand in *Wyatt*, the Fifth Circuit held the defendants could raise the defense because malice and lack of probable cause were elements of the common-law abuse of process claim. 994 F.2d at 1119–21. The Fifth Circuit recognized that the Supreme Court "focused its inquiry on the *elements* of these torts," and found "that plaintiffs seeking to recover on these theories were required to prove that defendants acted with malice *and* without probable cause." *Id*. at 1119 (first emphasis added).

The Fifth Circuit's observation is correct. In *Wyatt*, Justice Kennedy agreed with then Chief Justice Rehnquist that "it is something of a misnomer to describe the common law as creating a good faith *defense*; we are in fact concerned with the essence of the wrong itself, with the essential elements of the tort." 504 U.S. at 172; *see id*. at 176 n.1 (Rehnquist, C.J., dissenting) (similar).

The Third and Second Circuits later followed the Sixth and Fifth Circuits' lead and recognized that good faith is a defense to an abuse of process or malicious

prosecution claim arising from abuse of judicial process. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1276–77 (3d Cir. 1994); *Pinsky v. Duncan*, 79 F.3d 306, 312–13 (2d Cir. 1996). The Second Circuit in *Pinsky* required proof of "malice" and "want of probable cause" because "malicious prosecution is the most closely analogous tort and look[ed] to . . . for the elements that must be established in order for [the plaintiff] to prevail on his § 1983 damages claim." 79 F.3d at 312–13. The Third Circuit in *Jordan* required proof of "malice" for the same reason, recognizing that while "section 1983 does not include any *mens rea* requirement in its text, . . . the Supreme Court has plainly read into it a state of mind requirement *specific to the particular federal right* underlying a § 1983 claim." 20 F.3d at 1277 (emphasis added).[4]

More recently, the Ninth Circuit in *Clement v. City of Glendale*, 518 F.3d 1090, 1297 (9th Cir. 2008), held "the facts of this case justify allowing" a towing company that towed a vehicle pursuant to police instructions to assert a good faith defense. *Id*. at 1297. The Ninth Circuit did not identify its legal basis for recognizing the defense or its scope.

---

[4] The Sixth Circuit also reiterated its *Duncan* holding in another abuse of process case, *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 699 (6th Cir. 1996). *Vector Research* involved, in relevant part, a *Bivens* claim against attorneys for searching and seizing property pursuant to an *ex parte* court order. *Id*. at 695-97. The Court held the defendants could escape liability if they acted in good faith. *Id*. at 699.

As the foregoing review makes clear, these cases held that good faith reliance on existing law can defeat the malice and probable cause elements of a constitutional claim arising from an abuse of judicial process. That was the claim at issue in those cases (with the exception of *Clement*). *See Wyatt*, 504 U.S. at 160 (state court complaint in replevin); *Duncan*, 844 F.2d at 1267 (state court prejudgment attachment order); *Jordan*, 20 F.3d at 1276–77 (state court judgment and garnishment process); *Pinsky*, 79 F.3d at 312–13 (state court prejudgment attachment procedure); *Vector Research*, 76 F.3d at 695-96 (federal court ex parte search order). [5]

These cases did not recognize an across-the-board good faith defense—i.e., that any defendant that relies on a statute is exempt from paying damages under Section 1983. In fact, these cases did not recognize a true "defense" of any sort. *See Wyatt*, 504 U.S. at 172 (Kennedy J., concurring); *id*. at 176 n.1 (Rehnquist, C.J., dissenting). The Justices in *Wyatt* and the Second, Third, Fifth, and Sixth circuits found malice and lack of probable cause to be *elements* of abuse of process claims that *plaintiffs* bear the burden of proving. *See Wyatt*, 994 F.2d at 1119–20; *Jordan*, 20 F.3d at 1277; *Pinsky*, 79 F.3d at 312; *Duncan*, 844 F.2d at 1267. While good faith reliance on existing law may defeat those elements, such reliance is not a defense

---

[5] *Clement* does not support a good faith defense based in statutory reliance because *Clement* did not involve reliance on a statute, but rather reliance on police instructions to tow a car. 518 F.3d at 1297. The decision is also too ambiguous to support the sweeping proposition that reliance on a statute is a defense to all Section 1983 claims.

to Section 1983 writ large.

Although not binding on this Court, Plaintiffs acknowledge that since SEIU filed its motion, the Seventh Circuit issued the first appellate opinion recognizing the type of reliance defense SEIU requests here. *Janus v. AFSCME Council 31*, No. 19-1553, 2019 U.S. App. LEXIS 33071, at *27 (7th Cir. Nov. 5, 2019)(Attached as Exhibit A). This decision, part of the ongoing post-Supreme Court litigation in the *Janus* case itself, sides with SEIU. Plaintiffs submit this decision is in error, for all the reasons described in this Opposition. Judge Manion's separate opinion, while concurring "with the court's ultimate conclusion," comes closer to the mark, explaining that "[t]he unions received a huge windfall for 41 years," and that "a better way of looking at it would be to say rather than good faith, [the unions] had very 'good luck' in receiving this windfall for so many years." *Id*. at 35-37. Plaintiffs submit that this Court should not allow SEIU to enjoy this good luck at the expense of Plaintiffs and their class members.

### B.   Malice and lack of probable cause are not elements of or defenses to a First Amendment compelled speech violation.

Unlike in claims arising from abuses of judicial processes, malice and lack of probable cause are not elements of, or a defense to, a First Amendment deprivation. In general, "free speech violations do not require specific intent." *OSU Student Alliance*, 699 F.3d at 1074. In particular, a compelled speech violation does not require any specific intent. Under *Janus*, a union deprives public employees of

their First Amendment rights by taking their money without affirmative consent. 138 S. Ct. at 2486. A union's intent when so doing is immaterial.

Thus, whether SEIU relied in good faith on Pennsylvania's agency fee statute when it seized agency fees from Plaintiffs' and other employees without their consent is irrelevant. Either way, the action deprived the employees of their First Amendment rights. Good faith simply is not a defense to a union fee seizure under *Janus*.

Given that malice and lack of probable cause are not elements of First Amendment compelled-speech claims, it is irrelevant which common law tort may be most analogous to such claims. Some district courts, however, have nevertheless evaluated which common law tort a compelled speech violation most resembles. *See, Carey v. Inslee,* 364 F. Supp. 3d 1220, 1229-30 (W.D. Wash. 2019); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1005 (D. Alaska 2019). Those district courts have lost sight of the relevance of common law analogies, which are to determine the elements necessary to prove a particular constitutional deprivation.

Some constitutional claims actionable under Section 1983 have no common law analogue. Section 1983 is not "simply a federalized amalgamation of pre-existing common-law claims," but "is broader in that it reaches constitutional and statutory violations that do not correspond to any previously known tort." *Rehberg*, 566 U.S. at 366. Plaintiffs' First Amendment compelled-speech claim has no common law

21

analogue. The Supreme Court explained that "[c]ompelling a person to subsidize the speech of other private speakers" violates the First Amendment because it undermines "our democratic form of government" and leads to individuals being "coerced into betraying their convictions." *Janus*, 138 S. Ct. at 2464. This injury is unlike that caused by common law torts. It is peculiar to the First Amendment.

There is no basis for importing the elements or defenses to any common law tort into Plaintiff's First Amendment claim. There is especially no basis for importing a "good faith," state of mind element because, as discussed above, "free speech violations do not require specific intent," *OSU Student Alliance*, 699 F.3d at 1074. Moreover, the *Janus* Supreme Court decision held that a claim for compelled subsidization for union speech requires only that a state and union seize union fees from employees without their prior consent, *Janus*, 138 S. Ct. at 2486.[5]

The bottom line is that good faith is not a defense to a deprivation of First Amendment rights under *Janus*. As discussed in Section III below, good faith also is not a defense to Section 1983 damages liability. SEIU, thus, lacks a cognizable basis for asserting a good faith defense.

## III.   In the alternative, a good faith defense does not shield SEIU from returning the monies it unconstitutionally seized from Plaintiffs.

---

[5] Alternatively, if it is relevant, Plaintiffs' claim is most like the tort of conversion because the union wrongfully took their property without authorization. Good faith is not a defense to conversion, a strict liability tort. *See Morisette v. United States*, 342 U.S. 246, 253-54 (1952); Richard A. Epstein, *Torts*, § 1.12.1 at 32 (1999).

Even if SEIU could raise a good faith defense to Section 1983, the Union would find no shelter under it. Irrespective of whether SEIU had a good faith basis for believing it could *take* Plaintiffs' money pursuant to Pennsylvania's agency fee statute at the time, SEIU had no reasonable basis for believing it could *keep* their money if the Supreme Court held those fee seizures to be unconstitutional.

As described above, SEIU knew or should have known that a Supreme Court decision holding agency fee seizures unconstitutional would be retroactive. That has been the law at least since 1993, when the Supreme Court in *Harper* clarified that "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." 509 U.S. at 97. SEIU, thus, knew or should have known that a Supreme Court decision holding agency fee seizures unconstitutional would apply to the fees it seized from employees before the decision was issued.

SEIU also should have known that monies or property taken from individuals under statutes later found unconstitutional must be returned to their rightful owner. Fines collected from individuals pursuant to statutes later declared unconstitutional also must be returned. *See Pasha v. United States*, 484 F.2d 630, 632-33 (7th Cir. 1973); *United States v. Lewis*, 478 F.2d 835, 846 (5th Cir. 1973); *Neely v. United*

23

*States*, 546 F.2d 1059, 1061 (3d Cir. 1976). "Fairness and equity compel [the return of the unconstitutional fine], and a citizen has the right to expect as much from his government, notwithstanding the fact that the government and the court were proceeding in good faith[.]" *United States v. Lewis*, 342 F. Supp. 833, 836 (E.D. La. 1972).

In *United States v. Windsor,* the Internal Revenue Service had forced the plaintiff to pay $363,053 in estate taxes pursuant to a validly enacted federal statute, the Defense of Marriage Act, which denied recognition under federal law to marriages between couples of the same sex. 570 U.S. at 753. The Supreme Court ruled that denying recognition to same sex marriage violated the Constitution. *Id.* at 774. Under Defendant's theory, Ms. Windsor would have had no entitlement to a refund of the taxes taken from her because the government took her money in good faith reliance on a presumptively valid federal statute. That such an argument was not even raised in the case suggests the untenable nature of Defendant's proposition: Section 1983 plaintiffs would never be able to seek a return of their money or property, even when all parties agree it was unconstitutionally taken from them. Similarly, Section 1983 plaintiffs who came after Ms. Windsor and who were similarly situated in the violation of their constitutional rights would not be able to receive their taxes back if the good faith defense were allowed for following a valid statute that was later found unconstitutional.

Even in the circuit court decisions that held good faith to be a defense to abuse of judicial processes that resulted in prejudgment replevin or an attachment of property, the defendant had to return the property at issue. In *Wyatt*, the defendants seized the plaintiff's cattle and tractor based on a court order pursuant to a replevin statute later held unconstitutional. 994 F.2d at 1115. While a good faith defense in the circuit court shielded the defendants from liability from incidental damages, they had to return the cattle and tractor. *Id.* In *Pinsky*, where a defendant attained an unconstitutional attachment on plaintiff's real property, the defendant did not retain that property. 79 F.3d at 311-13. In *Jordan*, where the defendant attained an unconstitutional attachment on plaintiff's checking account, the state courts "vacated the attachment of [plaintiff's] checking account." 20 F.3d at 1258.

Judge Mannion's opinion in *Laspina v. SEIU Pa. State Council*, which did not order the return of money, is inapposite because it involved the different issue of actual union dues paid by the plaintiff to SEIU, pursuant to a union contract. No. 3:18-2018 (JUDGE MANNION), 2019 U.S. Dist. LEXIS 147506 (M.D. Pa. Aug. 29, 2019)(Attached as Exhibit A). The present case involves not union dues, but union agency fees, which were clearly held to be unconstitutional by the Supreme Court in *Janus*.

Under *Harper, Reynoldsville Casket*, and these precedents, SEIU could not have reasonably believed it could keep the fees it seized from employees' wages if

the Supreme Court held these seizures unconstitutional. SEIU should have known

it would have to return the monies, should have held the monies in escrow, and

should be ordered to return them now.

## CONCLUSION

For the forgoing reasons, Defendant's Motion to Dismiss should be denied.

Dated: November 19, 2019                               Respectfully Submitted,

                                                      /s/ Charles O. Beckley, II
Brian K. Kelsey (Pro Hac Vice)                        Charles O. Beckley, II
bkelsey@libertyjusticecenter.org                      Pennsylvania Bar No. 47564
Reilly Stephens (Pro Hac Vice)                        Beckley & Madden, LLC
rstephens@libertyjusticecenter.org                    212 N. Third St., Suite 301
Liberty Justice Center                                Harrisburg, PA 17101
190 South LaSalle Street, Suite 1500                  Telephone (717) 233-7691
Chicago, Illinois 60603                               Facsimile (717) 233-3740
Telephone (312) 263-7668                              cbeckley@pa.net
Facsimile (312) 263-7702

William Messenger (Pro Hac Vice)
National Right to Work Legal Defense Foundation
8001 Braddock Rd., Suite 600
Springfield, VA 22160
Telephone (703) 321-8510
Facsimile (703) 321-9319
wlm@nrtw.org                                           *Attorneys for Plaintiffs*

## CERTIFICATE OF WORD COUNT

I, Reilly Stephens, certify, pursuant to Local Rule 7.8(b)(2), that the foregoing brief contains 6,417 words, exclusive of the table of contents and the table of authorities, which complies with the Court's Order of November 18, 2019, which granted Plaintiffs permission to submit a brief not exceeding 6,500 words.

November 19, 2019                                             /s/Reilly Stephens

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19[th]th day of November, 2019, a copy of the fore-

going Opposition to Defendant SEIU's Motion to Dismiss was served on all Counsel

of record via the Court's CM/ECF system.

<u>/s/ Charles O. Beckley, II</u>
**BECKLEY & MADDEN, LLC**
212 North Third Street, Suite 301
P. O. Box 11998
Harrisburg, PA  17108-1998
(717) 233-7691 (Telephone)
(717) 233-3740 (Facsimile)
 cbeckley@pa.net