SCOTT A. KRONLAND (SBN CA171693) (*pro hac vice*)
P. CASEY PITTS (SBN CA262463) (*pro hac vice*)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  (415) 421-7151
Facsimile:  (415) 362-8064
E-mail:     skronland@altber.com
            cpitts@altber.com

LAUREN M. HOYE (SBN PA307411)
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Telephone: (215) 656-3687
E-mail:  lhoye@wwdlaw.com

*Attorneys for Defendant SEIU Local 668*

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

HARRISBURG DIVISION

| | |
|---|---|
| JANINE WENZIG and CATHERINE KIOUSSIS,<br><br>Plaintiffs,<br><br>v.<br><br>SERVICE EMPLOYEES UNION LOCAL 668,<br><br>Defendant. | CASE NO.:  1:19-cv-01367-MEM<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT SEIU LOCAL 668'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Hon. Malachy E. Mannion<br><br>FAC Filed:     Oct. 28, 2019<br>Trial Date:    Not set. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii
INTRODUCTION ...............................................................................................1
ARGUMENT ......................................................................................................2
    1.     Private parties can assert a good faith defense to retrospective §1983 damages liability. ..................................................2
    2.     Local 668 has a good faith defense to damages liability in this case. ........................................................................................6
    3.     Plaintiffs have no equitable claim for return of property. ......................9
CONCLUSION ..................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Babb v. California Teachers Ass'n*,
 378 F.Supp.3d 857 (C.D. Cal. 2019), *appeal pending* ................................10, 11

*City of Newport v. Fact Concerts, Inc.*,
 453 U.S. 247 (1981)..........................................................................................2

*Clement v. City of Glendale*,
 518 F.3d 1090 (9th Cir. 2008) ..........................................................................6

*Connecticut v. Doehr*,
 501 U.S. 1 (1991)..............................................................................................6

*Cook v. Brown*,
 364 F.Supp.3d 1184 (D. Or. 2019), *appeal pending* .................................5, 10

*Crockett v. NEA-Alaska*,
 367 F.Supp.3d 996 (D. Alaska 2019), *appeal pending* ...............................3, 10

*Danielson v. AFSCME Council 28*,
 340 F.Supp.3d 1083 (W.D. Wash. 2018), *appeal pending* .................................8

*Davis v. United States*,
 564 U.S. 229 (2011)......................................................................................5, 9

*Diamond v. Pennsylvania State Educ. Ass'n*,
 399 F.Supp.3d 361 (W.D. Pa. 2019), *appeal pending*.........................................8

*Gilpin v. AFSCME*,
 875 F.2d 1310 (7th Cir. 1989) ........................................................................10

*Imbler v. Pachtman*,
 424 U.S. 409 (1976)..........................................................................................2

*Janus v. AFSCME, Council 31*,
 138 S.Ct. 2448 (2018)........................................................................................1

*Janus v. AFSCME Council 31* (*Janus II*),
 942 F.3d 352 (7th Cir. 2019) ....................................................................*passim*

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
 20 F.3d 1250 (3d Cir. 1994) ..............................................................................2

*LaSpina v. SEIU Pennsylvania State Council et al.*,
    2019 WL 4750423 (M.D. Pa. Sept. 30, 2019) ...................................................... 1

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982) ......................................................................................... 6, 7

*Manuel v. City of Joliet*,
    137 S.Ct. 911 (2017) ............................................................................................ 8

*McDonough v. Smith*,
    139 S.Ct. 2149 (2019) .......................................................................................... 8

*Mooney v. Ill. Educ. Ass'n*,
    942 F.3d 368 (7th Cir. 2019) ...................................................................... 1, 8, 10

*Mooney v. Illinois Educ. Ass'n*,
    372 F.Supp.3d 690 (C.D. Ill.),
    *aff'd*, 942 F.3d 368 (7th Cir. 2019) ..................................................................... 8

*Ogle v. OCSEA*,
    397 F.Supp.3d 1076 (S.D. Ohio 2019), *appeal pending* ..................................... 3

*Owen v. City of Independence*,
    445 U.S. 622 (1980) ............................................................................................. 4

*Pinsky v. Duncan*,
    79 F.3d 306 (2d Cir. 1996) ............................................................................... 3, 6

*Reynoldsville Casket Co. v. Hyde*,
    514 U.S. 749 (1995) ............................................................................................. 6

*Scott v. Philadelphia Hous. Auth.*,
    2011 WL 1791095 (E.D. Pa. May 11, 2011) ........................................................ 8

*Snyder v. King*,
    745 F.3d 242 (7th Cir. 2014) ................................................................................ 4

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
    490 F.Supp.2d 1091 (D. Nev. 2007) ..................................................................... 8

*Wilson v. Garcia*,
    471 U.S. 261 (1985) ......................................................................................... 7, 8

*Wyatt v. Cole*,
    504 U.S. 158 (1992) ..................................................................................... 2, 3, 7

*Wyatt v. Cole*,
    710 F.Supp.180 (S.D. Miss. 1989) ........................................................................7

**Statutes**

42 U.S.C. §1983 ............................................................................................*passim*

**Other Authorities**

18 Am.Jur.2d Conversion §7 ...................................................................................8

# INTRODUCTION

Defendant SEIU Local 668's opening memorandum cited 19 district court decisions and two recent Seventh Circuit decisions[1] that address the identical question presented here: Whether unions can be held retroactively liable for damages under 42 U.S.C. §1983 for collecting fair-share fees in reliance on state law and on-point U.S. Supreme Court precedent prior to *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448 (2018). All those decisions uniformly agree that unions have a good faith defense to pre-*Janus* §1983 liability because unions were following the law of the land. Plaintiffs offer no authority to the contrary and, as demonstrated below, Plaintiffs' arguments have been thoroughly considered and rejected by the other district courts to have decided this issue.

Moreover, this Court already held that Local 668 has a good-faith defense to pre-*Janus* liability in the related case *LaSpina v. SEIU Pennsylvania State Council et al.*, 2019 WL 4750423, at *6 n.7 (M.D. Pa. Sept. 30, 2019). Plaintiffs contend that *LaSpina* is "inapposite because it involved the different issue of actual union dues paid by the plaintiff to SEIU." Pls. Opp. at 25 (Dkt. 31). But the plaintiff in *LaSpina* claimed that she would not have joined the union if not for the fair-share fee requirement applicable to non-members. This Court recognized in *LaSpina* that the plaintiff's §1983 claim was meritless because, among other reasons, Local 668 had a good faith defense to §1983 liability for having collected fair-share fees from non-members before *Janus*. As such, *LaSpina's* reasoning is directly on point. Plaintiffs provide no good reason why, in the absence of a subsequent,

---

[1] *Janus v. AFSCME Council 31* (*Janus II*), 942 F.3d 352 (7th Cir. 2019); *Mooney v. Ill. Educ. Ass'n*, 942 F.3d 368 (7th Cir. 2019).

contrary ruling by the Third Circuit or U.S. Supreme Court, this Court should reach a different conclusion in a related case against the same defendant.

## ARGUMENT

**1. Private parties can assert a good faith defense to retrospective §1983 damages liability.**

Plaintiffs contend that good faith can never be a defense to §1983 damages liability. But the Third Circuit already held that private defendants could assert a good faith defense to liability in *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1276-77 (3d Cir. 1994). That dispositive point aside, none of Plaintiffs' arguments has merit.

**A.** Plaintiffs' initial submission is that good faith cannot be a defense to §1983 liability because the text of §1983 does not provide for such a defense. Pls. Opp. at 3-5. But the Supreme Court long ago rejected Plaintiffs' approach to construing §1983. While the statutory text of §1983 "on its face" admits of no immunities or defenses, the view that the statute "should be applied as stringently as it reads …. has not prevailed." *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976); *see also Wyatt v. Cole*, 504 U.S. 158, 163-64 (1992); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258 (1981) ("[T]he tort liability created by §1983 cannot be understood in a historical vacuum …. [M]embers of the 42d Congress were familiar with common-law principles, including defenses previously recognized in ordinary tort litigation, and … they likely intended these common-law principles to obtain …."). As the Seventh Circuit recognized, "[t]he problem with [Plaintiffs]' absolutist position . . . is that the Supreme Court abandoned it long ago, when it recognized that liability under section 1983 is subject to

common-law immunities that apply to all manner of defendants." *Janus II*, 942 F.3d at 362.

**B.** Plaintiffs next argue against a good faith defense on the theory that, because private defendants typically are not entitled to qualified immunity, it would be "anomalous" to allow them "the functional equivalent of immunity under the guise of a 'defense.'" Pls. Opp. at 7. There is no anomaly. The prospect that private parties would, on the one hand, enjoy some protection similar to qualified immunity but, on the other hand, lack the significant procedural protections of qualified immunity such as immediate appealability, is precisely the balance the Supreme Court endorsed in *Wyatt*. *See Janus II*, 942 F.3d at 363 ("Mr. Janus rejects the line that the Court drew between qualified immunity and a defense to liability; he sees it as nothing but a labeling game. But *Wyatt I* directly refutes this criticism."); *Ogle v. OCSEA*, 397 F.Supp.3d 1076, 1090 (S.D. Ohio 2019) ("the unavailability of qualified immunity has no effect on the availability of [the union]'s good faith defense"), *appeal pending*; *Crockett v. NEA-Alaska*, 367 F.Supp.3d 996, 1004 (D. Alaska 2019) (noting that, in *Wyatt*, the Court recognized "an affirmative defense based on good faith … as separate and distinct from qualified immunity"), *appeal pending*.

Nor are Plaintiffs correct that the good faith defense lacks support in the common law. Pls. Opp. at 6 n.1. Both Justice Kennedy's and Chief Justice Rehnquist's opinions in *Wyatt*—collectively joined by a majority of the Court—emphasized the common-law basis for the good-faith defense. *See also Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) ("There is common law authority that it is objectively reasonable to act on the basis of a statute not yet held invalid.").

**C.** Plaintiffs next urge that the good faith defense to damages liability is incompatible with the Supreme Court's reasoning in *Owen v. City of Independence*, 445 U.S. 622 (1980). Pls. Opp. at 8-10. But *Owen* considered whether municipalities are entitled to qualified immunity, not whether private parties can assert a good faith defense. Municipalities are potentially liable under §1983 only for their own policies, not for following state laws. *See, e.g.*, *Snyder v. King*, 745 F.3d 242, 246-47 (7th Cir. 2014). *Owen* also relied on several unique policy reasons for denying municipalities immunity—reasons that do not apply here—including most notably that municipal liability (unlike the liability of individuals or private entities) is borne by the general public and that it "is fairer to allocate any … financial loss to the inevitable costs of government borne by all the taxpayers[.]" 445 U.S. at 655; *see also id.* at 657 (damages caused by municipality are "appropriately chargeable to the populace as a whole").

**D.** Plaintiffs next urge that a good faith defense would "render Section 1983 self-defeating" and "undermine the statute's remedial purposes" because the defense would be available to private parties in every §1983 case. Pls. Opp. at 11-12. To the contrary, private parties that are not acting in good faith (*e.g.* a union that continues to collect fair-share fees *after* the Supreme Court's decision in *Janus*) would still face damages liability. As the Seventh Circuit explained in *Janus II*, this is the clearest case for the application of a good faith defense because "only rarely will a party successfully claim to have relied substantially and in good faith on both a state statute *and* unambiguous Supreme Court precedent validating that statute." *Janus II,* 942 F.3d at 367 (emphasis in original). As such, it is not necessary to consider the outer contours of the defense.

**E.** Finally, Plaintiffs contend that a good faith defense to damages liability is inconsistent with principles of "retroactivity." Pls. Opp. at 12-13. Even assuming *arguendo* that *Janus* is retroactive as a matter of substantive law, however, "[r]emedy is a separate, analytically distinct issue" from retroactivity, and "[r]etroactive application [of a new rule announced by the Supreme Court] does not … determine what 'appropriate remedy' (if any)" a party should obtain when challenging actions taken under the old rule. *Davis v. United States*, 564 U.S. 229, 243 (2011).

In *Davis*, the Supreme Court applied a good faith-based limitation on the exclusionary rule notwithstanding that the police search at issue violated the Fourth Amendment as construed in a recent, on-point Supreme Court decision that overruled prior Circuit precedent. The Court concluded that the exclusionary rule should not apply to searches conducted "in objectively reasonable reliance on binding judicial precedent." *See id.* at 239-41. The Court explained that, because retroactivity and remedy are distinct, the Court's decision not to apply the exclusionary rule was entirely consistent with the principle that its interpretation of the Fourth Amendment applied retroactively. *Id.* at 243-45. "Applying *Davis*'s reasoning in the instant case makes clear that allowing [the Union] to avail itself of the good faith defense is not contrary to the retroactivity doctrine." *Cook v. Brown*, 364 F.Supp.3d 1184, 1193 (D. Or. 2019), *appeal pending*.

Nor is the application of the good faith defense based *solely* on reliance interests, as Plaintiffs contend. Pls. Opp. at 12-13. Rather, the good faith defense also serves a strong public policy interest in promoting respect for the rule of law by encouraging private parties to order their affairs based on presumptively valid

5
SEIU Local 668's Reply in Support of Motion to Dismiss FAC, #1:19-cv-01367-MEM

state statutes, rather than in derogation of those statutes.  The good faith defense thus reflects "both reliance interests and other significant policy justifications." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995).

> **2.** **Local 668 has a good faith defense to damages liability in this case.**

**A.**  Plaintiffs argue in the alternative that, even if a good faith defense may be asserted to *some* §1983 claims, good faith cannot be a defense here because "a compelled speech violation does not require any specific intent."  Pls. Opp. at 20.  But the procedural due process violations in the cases Plaintiffs discuss did not require any specific intent either.  The courts in those cases concluded that the plaintiffs had suffered a violation of their due process rights but that private defendants who acted in good faith would not be liable for damages.  *Compare Connecticut v. Doehr,* 501 U.S. 1, 11-18 (1991) (holding that the plaintiff's due process rights were violated), *with Pinsky,* 79 F.3d at 311-12 (holding on remand that a private defendant would not be liable for damages for the due process violation in *Connecticut v. Doehr* if the private defendant was acting in good faith); *see also Clement v. City of Glendale*, 518 F.3d 1090, 1093-96 (9th Cir. 2008) (first holding that plaintiff's constitutional due process rights had been violated without considering defendant's state of mind, then concluding that private defendant was entitled to assert good faith defense).

The Supreme Court in *Lugar v. Edmondson Oil Co.* suggested the recognition of an affirmative good faith defense to address the "concern[] that private individuals who innocently make use of seemingly valid state law" could unfairly be held liable "if the [state] law is subsequently held to be

unconstitutional." 457 U.S. 922, 942 n.23 (1982). But whether the state pre-judgment attachment procedure in *Lugar* effected a deprivation of the plaintiff's constitutional rights did not depend on the motive or state of mind of the private party invoking that procedure—which should have precluded any good faith defense under Plaintiffs' theory. Likewise, in *Wyatt* the private defendant's invocation of Texas's statutory replevin procedure was held to violate the plaintiff's procedural due process rights, regardless of the defendant's motive or state of mind. *See Wyatt v. Cole*, 710 F.Supp.180, 183 (S.D. Miss. 1989) (granting declaratory judgment invaliding replevin procedure). The Justices nonetheless recognized that a private defendant who invoked that procedure in good faith should have a defense to §1983 liability, and the Fifth Circuit recognized and applied the defense on remand. *See* Union Opening Mem. at 6-8 (Dkt. 26).

**B.** Plaintiffs also urge that no good faith defense can be asserted here because their §1983 claim is (they contend) not analogous to any common law tort claim with a scienter requirement. Opp. at 15-20.

This argument should be rejected as a threshold matter because the Supreme Court has recognized that "practical considerations" weigh in favor of generally applicable defenses. *Wilson v. Garcia*, 471 U.S. 261, 272 (1985). *Wilson* concluded, for example, that the same statute of limitations defense should apply to all §1983 claims, regardless of the constitutional tort at issue. As *Wilson* explained, this construction of §1983 reflected the need to avoid a rule that would make the availability of the defense turn upon "an analysis of the particular facts of each claim," which "inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of §1983." *Id*. Moreover,

> [t]he principles of fairness and equality underlying the good-faith defense in the § 1983 context demand a private defendant relying in good faith on a presumptively constitutional statute not be abandoned and exposed when the law is subsequently held unconstitutional, while the State remains cloaked in sovereign immunity and its officials are shielded by the veil of qualified immunity. Quibbles over which tort as it existed at common law in 1871 is most analogous to the harm wrought by the statute in question would only undercut these purposes.

*Mooney v. Illinois Educ. Ass'n*, 372 F.Supp.3d 690, 703 (C.D. Ill.), *aff'd*, 942 F.3d 368 (7th Cir. 2019).

In any event, if a common law analogy were necessary, the conduct at issue here would best be analogized to abuse of process or interference with contract, two common law torts with scienter requirements. *See Janus II*, 942 F.3d at 364-66; *Mooney*, 372 F.Supp.3d at 703 n.5; *Danielson v. AFSCME Council 28*, 340 F.Supp.3d 1083, 1085-86 (W.D. Wash. 2018), *appeal pending*; *Diamond v. Pennsylvania State Educ. Ass'n*, 399 F.Supp.3d 361, 397-98 (W.D. Pa. 2019), *appeal pending*. To be sure, the analogy may not be perfect. But the Supreme Court has explained that analogies between common law torts and §1983 causes of action "are bound to be imperfect." *Wilson*, 471 U.S. at 272. Common law principles "'are meant to guide rather than to control'" §1983 litigation, and the common law "serves 'more as a source of inspired examples than of prefabricated components.'" *McDonough v. Smith*, 139 S.Ct. 2149, 2156 (2019) (*quoting Manuel v. City of Joliet*, 137 S.Ct. 911, 920 (2017)).[2]

---

[2] Plaintiffs suggest that the tort of conversion would be the best analogy. Pls. Opp. at 22 n.5. At common law, however, "[m]onies [were] intangible and, therefore, not subject to a claim for conversion." 18 Am.Jur.2d Conversion §7. Even today, most jurisdictions hold that unpaid wages are not a type of property that can

### 3. Plaintiffs have no equitable claim for return of property.

Plaintiffs contend that the Union cannot assert a good faith defense here because, even if the Union acted in good faith in receiving fair-share fees, the Union could not have had a good faith belief that, if the Supreme Court overruled *Abood*, unions could "keep" the fair-share fees previously collected. Opp. at 22-26. This argument misunderstands the relevant inquiry.

The issue in *Davis* was whether the defendant police officer relied in good faith on then-valid precedent regarding the lawfulness of his actions at the time—not, as Plaintiffs' theory would require, whether the officer had a good faith belief that a later Supreme Court decision overruling that precedent would not apply to his search as a matter of substantive law. Likewise, the good faith defense does not depend on a defendant's predictions about how courts might resolve questions of retroactivity created by a future change in the substantive law governing the defendant's conduct. Whether the Union could have predicted that a future Supreme Court decision would not only overrule *Abood* but also declare that holding to be retroactive is both entirely speculative (given that *Janus* did not state that its new rule of law is retroactive) and irrelevant in determining whether the

---

support a conversion claim. *See In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F.Supp.2d 1091, 1101-16 (D. Nev. 2007); *Scott v. Philadelphia Hous. Auth.*, 2011 WL 1791095, at *10-12 (E.D. Pa. May 11, 2011). Moreover, Plaintiffs never had possession of the funds used to pay fair-share fees or any expectation of receiving those funds, so conversion is a poor analogy for that reason as well. *See Janus II*, 942 F.3d at 365. Finally, the analogy to conversion does not reflect the central element of the §1983 claim against the Union—that the Union invoked the assistance of the government—without which there would be no state action.

Union reasonably relied upon the Supreme Court's then-binding decision in *Abood*.

Moreover, Plaintiffs do not have a viable claim for equitable relief because fair-share fees already paid for collective bargaining representation that Local 668 provided to the entire unit. "[I]t is not the case that the agency fees remain in a vault, to be returned like a seized automobile." *Babb v. California Teachers Ass'n*, 378 F.Supp.3d 857, 876 (C.D. Cal. 2019), *appeal pending*. Thus, as the Seventh Circuit recently concluded, plaintiffs who paid pre-*Janus* fair-share fees do not have an equitable claim for the return of property. *See Mooney*, 942 F.3d at 370-71.

Equally to the point, the equities do not support Plaintiffs' claim. "Plaintiffs had no expectation of receiving the fair share fees paid to the Union[], and Plaintiffs already have received the benefits of collective bargaining representation paid for with those fees." *Crockett*, 367 F.Supp.3d at 1006; *Cook*, 364 F.Supp.3d at 1192. Requiring the Union to return Plaintiffs' fees under such circumstances would "stand[] [the equitable] remedy on its head." *Gilpin v. AFSCME*, 875 F.2d 1310, 1316 (7th Cir. 1989). "The plaintiffs do not propose to give back the benefits that the union's efforts bestowed on them. These benefits were rendered with a reasonable expectation of compensation founded on the collective bargaining agreement and [state] labor law, and the conferral of the benefits on the plaintiffs would therefore give rise under conventional principles of restitution to a valid claim by the union for restitution if the union were forced to turn over [already paid fair-share fees] to the plaintiffs and others similarly situated …." *Id*. "[T]he pre-*Janus* regime consisted of an obligation by the Plaintiffs to pay fees to

the Union Defendant[], and a concomitant obligation by the Union Defendant[] to use those fees to bargain on Plaintiffs' behalf…. As the Union Defendant[] cannot retract [its] performance on this implied contract, it would be inequitable to force [the Union] to repay Plaintiffs' agency fees." *Babb*, 378 F.Supp.3d at 876.

## CONCLUSION

Plaintiffs' First Amended Complaint should be dismissed.

Date:  December 3, 2019   Respectfully Submitted,

        /s/P. Casey Pitts
    P. Casey Pitts (CA262463)

SCOTT A. KRONLAND (*pro hac vice*)
P. CASEY PITTS (*pro hac vice*)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  (415) 421-7151
Facsimile:   (415) 362-8064
E-mail:        skronland@altber.com
                cpitts@altber.com

LAUREN M. HOYE (SBN PA307411)
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Telephone: (215) 656-3687
E-mail:  lhoye@wwdlaw.com

*Attorneys for Defendant SEIU Local 668*