## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANINE WENZIG and**<br>**CATHERINE KIOUSSIS,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | | **CIVIL ACTION NO. 1:19-1367** |
| **v.** | : | **(JUDGE MANNION)** |
| **SERVICE EMPLOYEES**<br>**INTERNATIONAL UNION**<br>**LOCAL 668,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Pending before the court is the motion to dismiss the first amended complaint ("FAC"), (Doc. 19), of plaintiffs Janine Wenzig and Catherine Kioussis filed by defendant Service Employees International Union Local 668 ("SEIU"), (Doc. 25). Defendant's motion seeks dismissal of this case for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). SEIU contends that plaintiffs' First Amendment claims against it, in this putative class action, for retrospective monetary relief under 42 U.S.C. §1983 should be dismissed since it relied in good faith on the formerly valid Pennsylvania law and longstanding United States Supreme Court precedent that allowed it to collect fair-share fees from public-sector employees who were not members of the union. For the reasons that follow, SEIU's motion to dismiss under Rule 12(b)(6) will be **GRANTED** and, plaintiffs' federal claims against SEIU will be **DISMISSED WITH PREJUDICE**.

1

## I.   BACKGROUND

Plaintiffs bring this civil rights action pursuant to 42 U.S.C. §1983.[1]

Plaintiffs are both employed by the Commonwealth of Pennsylvania. Wenzig

is employed by the Department of Human Services as a Licensing Supervisor

and Kioussis is an Income Maintenance Supervisor. SEIU is a labor union

with its headquarters in Harrisburg, Pennsylvania, and it is the exclusive

representative for several bargaining units in the state, including plaintiffs'

bargaining unit. As members of the bargaining unit represented by SEIU,

plaintiffs received the benefits of the Collective Bargaining Agreement ("CBA")

between SEIU and Pennsylvania. However, even though plaintiffs were not

members of SEIU, they allege that the union was legally allowed to collect fair

share fees from them under Pennsylvania's Public Employee Fair Share Fee

Law, "43 Pa.Stat.Ann. §1102.3", since it represented them in collective

bargaining.[2] Under state law, SEIU negotiated with the state for the collection

---

[1]The facts alleged in plaintiffs' FAC must be accepted as true in considering defendant SEIU's motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).
   Also, since the legal standard to state a claim under §1983 is correctly stated in the briefs of the parties, the court will not repeat it herein. *See also* Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (To state an actionable claim under §1983, a plaintiff must prove that someone deprived her of a constitutional right while acting under the color of state law.).

[2]SEIU notes that since plaintiffs were public employees employed by Pennsylvania, they were subject to its "agency-shop statute" [i.e., the fair share fee law], namely, 71 Pa.Stat.Ann. §575. *See also* Diamond v. Pennsylvania State Education Association, 399 F.Supp.3d 361, 371 (W.D.Pa. July 8, 2019).
   The court also notes that the Public Employee Relations Act ("PERA"),

of fair share fees from nonmembers, including plaintiffs.

In particular, Article 3, Section 3 of the CBA, which was effective from July 1, 2016 through June 30, 2019, provided:

> The Employer further agrees to deduct a fair share fee from all compensation paid to all employees in the bargaining unit who are not members of the Union. Authorization from non-members to deduct fair share fees shall not be required. The amounts to be deducted shall be certified to the Employer by the Union and the aggregate deductions of all employees shall be remitted together with an itemized statement to the Union by the last day of the succeeding month after such deductions are made.

Thus, under the CBA, prior to June 27, 2018, all employees in the collective bargaining units who were represented by SEIU and who were not union members, such as plaintiffs, were forced to pay "fair-share fees" to SEIU as a condition of their public employment. Plaintiffs further allege that before June 27, 2018, government employers covered by the CBA "deducted fair share fees from Plaintiffs' and other nonmembers' wages without their consent and, ..., transferred those funds to SEIU, which collected those funds." Plaintiffs also allege that "[a]s of 2018, agency fees were assessed by SEIU at 0.85% of an employee's gross income; union member paid dues of 1.39% of gross income."

As such, plaintiffs aver that "SEIU should have known that its seizure of fair share fees from non-consenting employees likely violated the First

---

43 Pa.Stat.Ann. §§1101.101 *et seq*., "delineates the [Pennsylvania Labor Relations Board's] authority with regard to public employers", such as the Commonwealth, but the PERA does not contain any provision that gives the PLRB authority to enforce 71 Pa.Stat.Ann. §575. *Id*. at 382 (citation omitted).

3

Amendment."

Plaintiffs also seek to bring this case as a class action under Fed.R.Civ.P. 23(b)(3) for themselves and for all others similarly situated. They define the proposed class as "all current and former employees from whom SEIU collected fair share fees pursuant to its collective bargaining agreement with the Commonwealth of Pennsylvania."

Plaintiffs raise one claim in their FAC, namely, a First Amendment claim. Specifically, plaintiffs allege that "SEIU violated [their] and class members' First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, by requiring the payment of fair share fees as a condition of employment and by collecting such fees."

As relief, plaintiffs request declaratory judgment, pursuant to 28 U.S.C. §2201(a), "declaring that SEIU violated Plaintiffs' and class members' constitutional rights by compelling them to pay fair share fees as a condition of their employment and by collecting fair-share fees from them without consent." Additionally, plaintiffs seek monetary damages "in the full amount of fair share fees and assessments seized from their wages", as well as costs and attorneys' fees under 42 U.S.C. §1988.

Plaintiffs are proceeding on her FAC filed on October 28, 2019. (Doc. 19). On November 5, 2019, SEIU filed its motion to dismiss plaintiffs' FAC, (Doc. 25), and its brief in support, (Doc. 26). On November 19, 2019, plaintiffs filed their brief in opposition. (Doc. 31). SEIU filed its reply brief on December

3, 2019. (Doc. 32).

The court has jurisdiction over this case pursuant to [28 U.S.C. §1331](#) and [28 U.S.C. §1343(a)](#) because plaintiffs aver a violation of their rights under the U.S. Constitution. Venue is appropriate in this court since the parties are located in this district and the alleged constitutional violations occurred in this district. *See* [28 U.S.C. §1391](#).

## II. DISCUSSION

Plaintiffs instituted this case after the Supreme Court decided Janus.[3] Plaintiffs are state employees who, before Janus, were required to pay fair-share fees to SEIU for collective bargaining representation.[4] Specifically, the CBA contained a fair share fee provision which required plaintiffs to pay fair-fair share fees to SEIU. However, after the Janus decision SEIU stopped receiving fair-share fees from non-members, including plaintiffs. In this action, plaintiffs seek SEIU to repay themselves, as well as a putative class of all non-union state employees, all the fair-share fees that the union received prior to Janus.

As a backdrop, prior to Janus, unions representing government employees could use "agency shop" clauses in collective bargaining

---

[3] Janus v. American Federation of State, County, and Municipal Employees, Council 31, — U.S. —, 138 S. Ct. 2448 (2018).

[4] Fair share fees are charges non-union member employees had to pay unions prior to Janus to finance the union's collective bargaining activities. *See* Diamond, 399 F.Supp.3d at 370.

agreements "which required every employee represented by a union, even those who declined to become union members for political or religious reasons, to pay union dues." Diamond, 399 F.Supp.3d at 370-71. In Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782 (1977), the Supreme Court "held that the charges were constitutional to the extent they were used to finance the union's collective-bargaining, contract-administration, and grievance activities." Id. at 370. "[T]he Court [in Abood] also concluded that the agency-shop clause and fees were unconstitutional insofar as the clause compelled non-member teachers to pay fees to the union that supported the union's political activities." Id.

> In accordance with Abood, Pennsylvania enacted its own agency-shop statute for public employees in 1988, 71 Pa. Stat. §575. According to Section 575, if mandated by the provisions of a collective-bargaining agreement, non-members of public-employee unions must pay fair-share fees to the unions. Id. §575(b). These fees consist of the regular union-membership dues less "the cost for the previous fiscal year of [the unions'] activities or undertakings which were not reasonably employed to implement or effectuate the duties of the employee organization as exclusive representative." Id. §575(a).

Id. at 371.

Thus, prior to Janus, Pennsylvania law expressly allowed a labor union which was the representative of a bargaining unit of public employees to collect fair share fees from the employees who were members of the bargaining unit but who did not join the union, as a condition of their employment. See 71 P.S.A. §575; 43 P.S.A. §1102.3. Further, based on Abood, "the general propriety of the fair-share fees permitted under Section

575 withstood constitutional scrutiny for many years." <u>Diamond</u>, 399 F.Supp.3d at 370. *Id*. (string citations omitted).

In <u>Janus</u>, the Supreme Court overruled <u>Abood</u>, and held that "a state law requiring non-union-member public employees to pay fees to the union to compensate the union for costs incurred in the collective-bargaining process" was unconstitutional. *Id*. at 372. Thus, the Court in <u>Janus</u>, 138 S. Ct. at 2486, held that "States and public-sector unions may no longer extract agency fees from nonconsenting employees." *Id*. Further, the Court held that "[n]either an agency fee nor any other payment to the union may be deducted from a non[-]member's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." *Id. See also* <u>Babb v. California Teachers Association</u>, 378 F.Supp.3d 857, 867 (C.D.Ca. 2019) (In <u>Janus</u>, the Supreme Court "overruled <u>Abood</u> [ ] and its progeny, holding that no form of payment to a union, including agency fees, can be deducted or attempted to be collected from an employee without the employee's affirmative consent.") (citing <u>Janus</u>, 138 S.Ct. at 2486).

Additionally, the Supreme Court in <u>Janus</u>, 138 S.Ct. at 2459, 2486, held that it was a violation of the First Amendment for public sector unions to require non-members to pay fair share fees as a condition of public employment. Following <u>Janus</u>, Pennsylvania's statute allowing the collection of "fair share" fees from non-members by unions is no longer enforceable. *See* <u>Hartnett v. Pennsylvania State Education Association</u>, 390 F.Supp.3d 600 (M.D.Pa. May 17, 2019). In <u>Diamond</u>, 399 F.Supp.3d at 385, the court

held that the issue of "whether Union Defendants could constitutionally collect fair-share fees from Plaintiffs pursuant to Section 575" "was mooted by the intervening Janus decision, which held that fair-share fees are unconstitutional."

Plaintiffs essentially argue that they suffered injury from the pre-Janus agency-shop arrangements because they were forced to pay SEIU fair-share fees as a condition of their employment with the state even though they declined union membership. They basically contend that their constitutional right to withhold money from the union was violated and that this inflicted an injury upon them that can be redressed under §1983 by an award of money damages for the violation of their First Amendment rights to free speech and association by forcing them to pay SEIU fair-share fees as a condition of their employment.

Plaintiffs strenuously assert that the good faith defense should not apply to their claim for damages under §1983 since they contend it is contrary to the statute and is incompatible with the statutory basis for qualified immunity.

SEIU contends that it is entitled to assert a good faith defense to plaintiffs' §1983 claim seeking retrospective monetary relief for their payments of the fair-share fees based on "Pennsylvania statute and then-controlling and directly on-point United States Supreme Court precedent that expressly authorized fair-share fees."[5] There is no dispute that before Janus the

---

[5]In their FAC, plaintiffs allege that SEIU "acted under color of state law and in concert with [Pennsylvania] when it compelled [them] to pay fair share

8

collection of fair-share fees by SEIU was permitted by Pennsylvania law as well as by the Supreme Court which repeatedly held that fair-share fees were constitutional and that public employees who were non-union members could be compelled to pay such fees that financed the union's collective bargaining activities. Abood, 431 U.S. at 225. Thus, requiring non-union member public employees to pay fair-share fees as a condition of their public employment was undoubtedly deemed constitutional in Abood, 431 U.S. at 232. As such, SEIU contends that since it acted "in good-faith reliance on presumptively valid state laws [in collecting pre-Janus fair-share fees], [it] ha[s] a complete defense to §1983 liability" and cannot be held retrospectively liable to plaintiffs in this case.

SEIU points out that "[n]ineteen district courts, including this Court, and

_____

fees." Although SEIU does not argue in this case that it was not acting under "color of state law", since plaintiffs are proceeding under §1983, SEIU must be considered a state actor. In Oliver v. Service Employees International Union Local 668, — F.Supp.3d —, 2019 WL 5964778, *4-5 (E.D.Pa. Nov. 12, 2019), the court found that SEIU Local 668 is not a "state actor" for the purposes of §1983 since it "is not an actor controlled by the state, is not performing a function delegated by the state, and is not entwined with government policies or management." However, in Janus v. AFSCME, 942 F.3d 352, 2019 WL 5704367 (7th Cir. Nov. 5, 2019), the Seventh Circuit found that union's conduct amounted to state action and union was a proper defendant under §1983 since "[the union] was a joint participant with the state in the agency-fee arrangement", and the state human resources department "deducted fair-share fees from the employees' paychecks and transferred that money to the union." Also, in LaSpina v. SEIU Pennsylvania State Counsel, 2019 WL 4750423 (M.D.Pa. Sept. 30, 2019), this court found that the plaintiff sufficiently alleged that SEIU was a state actor. (citing Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 942 n.23, 102 S.Ct. 2744 (1982) ("the Supreme Court held that private parties using a process established by state statute can be considered state actors for purposes of §1983.")). As such, the court finds that for purposes of the instant motion SEIU is a state actor.

the Seventh Circuit have already rejected the same §1983 claim Plaintiffs bring here" based on the good-faith defense.[6] Despite plaintiffs' arguments in their brief in opposition as to why the good faith defense should not bar their suit for damages under §1983, the court finds the many cases to which SEIU cites persuasive and concurs with their conclusion that the good faith defense shields the union from liability with respect to plaintiffs' post-Janus claims for damages under §1983.

In fact, this court noted in LaSpina, 2019 WL 4750423, at *6 n.7[7]:

[A]lthough "statutory and contractual provisions authorizing fair-share requirements are no longer enforceable after Janus", *see* Diamond, [399 F.Supp.3d 361] 2019 WL 2929875, at *14, the good-faith defense would apply to relieve SPL and [SEIU] from liability under §1983 since they reasonably relied on the constitutionality of Pennsylvania's fair-share fee law, §575, and the Supreme Court's decision in Abood which permitted such fees. *See id.* at *25-29 (citing, in part, Akers, 376 F.Supp.3d at 571-72 ("explaining that the plaintiffs could assert a good-faith defense because they complied with and relied on presumptively-valid state law and controlling Supreme Court precedent"; Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1006 (D. Alaska) ("discussing the inequity of holding the union defendants liable for pre-Janus fair-share fees when they collected the fees in accordance with state law and then-binding Supreme Court precedent"); Akers v. Maryland State Educ. Assoc., 376 F.Supp. 3d 563 (D.Md. 2019).

As this court noted in LaSpina, and based on the numerous cases cited

---

[6]Since SEIU correctly cites to the cases in its brief, (Doc. 26 at 11 n. 4), which have held that the good-faith defense precluded recovery in §1983 actions similar to the instant case, the court does not re-cite all of the applicable cases. *See also* note 9 below.

[7]The plaintiff in LaSpina filed an appeal to the Third Circuit which is currently pending.

herein, the court finds that SEIU can raise the good-faith defense with respect to plaintiffs' First Amendment claim under §1983 for the repayment of the fair-share fees that they paid the union. As SEIU states, "Plaintiffs' §1983 claim seeks a retrospective refund of fair-share fees collected before <u>Janus</u> issued, at a time when Pennsylvania statutes and controlling U.S. Supreme Court precedent expressly allowed the collection of such fees." (Doc. 26 at 14-15) (citing <u>Otto v. Pennsylvania State Educ. Association-NEA</u>, 330 F.3d 125 (3d Cir. 2003) ("upholding statutory fair-share fee system and collective bargaining agreement incorporating fair share fee requirement")).

In <u>Wyatt v. Cole</u>, 504 U.S. 158, 159, 168, 112 S.Ct. 1827 (1992), "[t]he Court determined that private individuals threatened with liability under §1983 cannot take advantage of the qualified immunity that protects government officials", but "explained that 'principles of equality and fairness may suggest ... that private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid should have some protection from liability [under §1983], as do their government counterparts.'" <u>Diamond</u>, 399 F.Supp.3d at 395. Subsequently, "the Third Circuit adopted the good-faith defense for private parties [facing §1983 liability] in <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250 (3d Cir. 1994). *Id*. at 396. In <u>Jordan</u>, 20 F.3d at 1276, the Third Circuit held that "[p]rivate defendants should not be held liable under §1983 absent a showing of malice and evidence that they either knew or should have known of the statute's constitutional infirmity." *Id*. (citation omitted). Thus, despite plaintiffs'

contentions, the court finds that SEIU can assert a good-faith defense in this case in which plaintiffs seek to impose liability against it for violations of their First Amendment rights under §1983.

After examining the good-faith defense in detail, the court in <u>Diamond</u> then concluded that "it was objectively reasonable for Union Defendants to rely on Section 575 and <u>Abood</u> [when collecting fair-share fees from Plaintiffs] before the Supreme Court's decision in <u>Janus</u>", *id*. at 398, and, thus found that "the good-faith defense applies to Plaintiffs' claims [under §1983] for repayment of previously paid fair-share fees as a matter of law." *Id*. at 398-99.[8]

---

[8]The court notes that plaintiffs also address the argument raised in some cases that, based on <u>Wyatt</u>, "the good-faith defense only applies if the most analogous common-law tort would have conferred similar immunities when §1983 was enacted." <u>Diamond</u>, 399 F.Supp. 3d at 397-98. Plaintiffs contend that while the good faith defense has been held to "defeat the malice and probable cause elements of a constitutional claim arising from an abuse of judicial process", "[the] cases did not recognize an across-the-board good faith defense—i.e., that any defendant that relies on a statute is exempt from paying damages under Section 1983." Plaintiffs state that since malice and probable cause are not elements of or defenses to their claim, i.e., "a First Amendment compelled speech violation", "it is irrelevant which common law tort may be most analogous to such [a] claim[]." As such, plaintiffs contend that their First Amendment compelled-speech claim has no common law analogue", and that SEIU should not be allowed to assert the good faith defense to their claim.

Since this court, as did the court in <u>Diamond</u>, 399 F.Supp. 3d at 398, "agrees with the opinions of various district courts that have determined — when presented with indistinguishable facts — that the applicability of the good-faith defense does not require analyzing the most analogous common-law tort", it does not conduct such an analysis herein. (string citations omitted). In fact, "when the Third Circuit adopted the good-faith defense in <u>Jordan</u>, the Third Circuit did not indicate whether the application of the good-faith defense depends on an analogous common-law tort", "[a]nd district court cases applying <u>Jordan</u> have not relied on common-law-tort

More recently, in <u>Oliver v. Service Employees International Union Local 668</u>, — F.Supp.3d —, 2019 WL 5964778 (E.D.Pa. Nov. 12, 2019), the court considered a case similar to the present case. In <u>Oliver</u>, plaintiff was an employee of the Pennsylvania Department of Human Services working as an Income Maintenance Caseworker and she was represented in collective bargaining by SEIU Local 668. When plaintiff's was hired, there existed a CBA between Local 668 and the Commonwealth. Plaintiff was told that she could "either enroll in Local 668 as a member and have full membership dues deducted regularly from her pay, or decline membership and contribute a reduced amount in the form of agency fees." *Id*. at *2. Given this choice, plaintiff joined as a member in Local 668 and dues were deducted from her pay. After <u>Janus</u>, plaintiff Oliver resigned from Local 668 and requested that deductions from her pay for union dues cease. The deductions were then stopped. Plaintiff then filed an action for damages against SEIU under §1983 for the dues she paid to SEIU from the beginning of her employment through her resignation. Plaintiff also sought "a declaratory judgment that certain provisions of Pennsylvania's Public Employee Relations Act (PERA) are unconstitutional as applied to her." *Id*. at *1.

The court in <u>Oliver</u>, *id*. at *4, found that "Local 668 is not a 'state actor' for the purposes of §1983", and that "[e]ven if there were sufficient state action to permit a §1983 suit against the Union to proceed, Local 668 would nonetheless prevail based upon its good-faith belief that it was complying with

analogs." *Id*. (string citations omitted).

13

statutory and constitutional law prior to <u>Janus</u>." *Id.* at *7. The court indicated that "[n]umerous federal courts have held that good-faith reliance on prior precedent defeats refund claims brought in the aftermath of <u>Janus</u>." *Id.*[9]

The court in <u>Oliver</u>, *id.* at *7, then explained that "[t]he Third Circuit, ..., has found that 'private defendants should not be held liable under §1983 absent a showing of malice and evidence that they either knew or should have known of the statute's constitutional infirmity.'" (citing <u>Jordan</u>, 20 F.3d at 1274 n. 29). Thus, the court in <u>Oliver</u>, *id.*, concluded that since "Plaintiff would need to prove that [SEIU] had a 'subjective' understanding that it was violating her rights or displayed 'gross negligence' in maintaining a belief that

---

[9]The court in <u>Oliver</u>, 2019 WL 5964778, *7 n. 13, cited to the following cases to support its finding that the good faith defense precluded plaintiff's §1983 case against SEIU:

<u>Janus v. AFSCME</u>, 942 F.3d 352 (7th Cir. Nov. 5, 2019); <u>Danielson v. AFSCME Council 28</u>, 340 F. Supp. 3d 1083, 1086 (W.D. Wash. 2018); <u>Carey v. Inslee</u>, 364 F. Supp. 3d 1220, 1232 (W.D. Wash. 2019); <u>Cook v. Brown</u>, 364 F. Supp. 3d 1184, 1193 (D. Or. 2019); <u>Crockett v. NEA-Alaska</u>, 367 F. Supp. 3d 996, 1006 (D. Alaska 2019); <u>Hough v. SEIU Local 521</u>, 2019 WL 1274528 at *1 (N.D. Cal. Mar. 20, 2019), amended, 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019); <u>Lee v. Ohio Educ. Ass'n</u>, 366 F. Supp. 3d 980, 981 (N.D. Ohio 2019); <u>Mooney v. Illinois Educ. Ass'n</u>, 372 F. Supp. 3d 690, 706 (C.D. Ill. 2019); <u>Bermudez v. SEIU Local 521</u>, 2019 WL 1615414 at *1 (N.D. Cal. Apr. 16, 2019); <u>Akers v. Maryland Educ. Ass'n</u>, 376 F. Supp. 3d 563, 572 (D. Md. 2019); <u>Wholean v. CSEA SEIU Local 2001</u>, 2019 WL 1873021 at *3 (D. Conn. Apr. 26, 2019); <u>Babb</u>, 378 F. Supp. 3d at 870; <u>Hernandez v. AFSCME Cal.</u>, 386 F. Supp. 3d 1300, 1304 (E.D. Cal. 2019) (since unions had authorization from the Supreme Court and state statute, the unions that followed the previously valid law were "entitled to the good-faith defense as a matter of law."); <u>Diamond v. Pa. State Educ. Ass'n</u>, 399 F.Supp.3d 361, ——, 2019 WL 2929875 at *29 (W.D. Pa. 2019); <u>Ogle v. Ohio Civil Svc. Employees Ass'n, AFSCME, Local 11</u>, 397 F. Supp. 3d 1076, 1087-88 (S.D. Ohio 2019).

its conduct was lawful", "Plaintiff will not be able to do so" because "[t]he CBA's agency shop provisions were lawful under PERA, and ..., were sanctioned by the Supreme Court in Abood." (internal citations omitted). The court also noted that since the CBA's agency shop provisions "had been considered and upheld by the Supreme Court multiple times after Abood, including most recently in Harris v. Quinn, 573 U.S. 616, 134 S.Ct. 2618 (2014)", and since "Janus was decided by a five-to-four majority, with a powerful dissent grounded in the doctrine of *stare decisis*", "it would be unreasonable to hold that [SEIU] should have known of the constitutional infirmity of agency shop provisions."

In the instant case, although plaintiffs allege in their FAC that "SEIU should have known that its seizure of fair share fees from non-consenting employees likely violated the First Amendment", (Doc. 19 at ¶13), pre-Janus, the law was clear that "[t]he CBA's agency shop provisions were lawful under PERA", and were authorized by Abood. Oliver, *id*. at *7. As such, under the Third Circuit's standard, plaintiffs cannot defeat SEIU's good faith defense in this case.

In fact, plaintiffs recognize that very recently the Seventh Circuit in Janus v. AFSCME, 942 F.3d 352, 2019 WL 5704367 (7th Cir. Nov. 5, 2019) ("Janus III"), issued the first appellate opinion on point with their case, i.e., to decide "whether a union may raise [the good faith defense] against its liability for the fair-share fees it collected before Janus []." In Janus III, plaintiff was an Illinois State employee who was not a member of the union and he filed a

§1983 action, after the Supreme Court decided his previous case in <u>Janus</u>, against the union seeking to recover the fair-share fees he was required to pay to the union. The Seventh Circuit found that the good faith defense precluded the state employee's claim for monetary damages for alleged past violations of his First Amendment rights. The Seventh Circuit stated that "every federal appellate court to have decided the question has held that, while a private party acting under color of state law does not enjoy qualified immunity from suit, it is entitled to raise a good-faith defense to liability under section 1983." <u>Janus</u> III, 942 F.3d at 362 (citations omitted). The Seventh Circuit included the Third Circuit's decision in <u>Jordan</u>, 20 F.3d at 1275-78, as a case that supported the union's ability to assert a good-faith defense to §1983 liability.

After the Seventh Circuit "recogniz[ed] that, under appropriate circumstances, a private party that acts under color of law for purposes of section 1983 may defend on the ground that it proceeded in good faith", the court then considered the question of whether the good faith defense was available to the union with respect to plaintiff's First Amendment claim seeking to hold it liable for the fair-share fees the union collected from him before <u>Janus</u>. The Seventh Circuit recognized "a good-faith defense in section 1983 actions when the defendant reasonably relies on established law."<u>Janus</u> III, 942 F.3d at 366. The Court then held that although "the good-faith defense to section 1983 liability is narrow", "[u]ntil [the Supreme Court in <u>Janus</u>] said otherwise, [the union] had a legal right to receive and spend fair-share fees

collected from nonmembers as long as it complied with state law and the Abood line of cases." *Id*. The Court also found that "the union did not demonstrate bad faith when it followed these rules." *Id.*

This court finds the Seventh Circuit's decision in Janus III compelling and concurs with it. As such, since SEIU "relied substantially and in good faith on both a [PA] state statute *and* unambiguous Supreme Court precedent [Abood] validating that statute", *id*. at 367(emphasis original), SEIU can assert the good faith defense to plaintiffs' First Amendment claim seeking to hold it liable under §1983.

Plaintiffs also argue that the Supreme Court's decision in Janus is retroactive under Harper v. Va. Dep't of Taxation, 509 U.S. 86, 97 (1993), and Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 752 (1995), and that the good faith defense is incompatible with the retroactivity principles under Reynoldsville Casket. Plaintiffs further contend that even if SEIU could raise the good faith defense to their claims under §1983, SEIU knew or should have known, based on Harper, that a later Supreme Court decision holding the collection of agency fees to be unconstitutional would be retroactive and thus, SEIU had no reasonable basis for believing it could keep their money if the Supreme Court held those fees to be unconstitutional.

No doubt that "when the Supreme Court applies a new rule of federal law to the parties before it, other courts must apply that decision retroactively." Diamond 399 F.Supp. 3d at 395 (citing Harper v. Va. Dep't of Taxation, 509 U.S. 86, 90, 97, 113 S.Ct. 2510 (1993)). In Diamond, *id*. at 396,

the court found that "Harper's retroactivity rule applies to Janus" since "Janus overruled 'clear past precedent' (Abood), announced a new rule regarding the unconstitutionality of fair-share fees, and applied that rule to the case by reversing the Seventh Circuit's dismissal of the plaintiffs' complaint." (citing Janus, 138 S.Ct. at 2460, 2462). The court in Diamond, *id*. at 396, then concluded that since "a court may find 'a previously existing, independent legal basis (having nothing to do with retroactivity) for denying [retroactive] relief', "there is an independent legal basis in this case for otherwise denying retroactive relief: the good-faith defense available to private parties [i.e., the state teacher's union] who are sued under §1983." (citing Jordan, 20 F.3d at 1276).

In the instant case, the court concurs with the rationale and conclusion in Diamond, *id*. at 395-96, and finds that although "Harper's retroactivity rule applies to Janus", "the good-faith defense to §1983 liability for damages provides an independent legal basis" for precluding plaintiffs' claim for retroactive relief from SEIU.

Moreover, in Janus III, 942 F.3d at 359, the Seventh Circuit considered the retroactivity argument and pointed out that if Janus is not retroactive, "that is the end of the line for [plaintiff], because the union's collection of fair-share fees was expressly permitted by state law and Supreme Court precedent from the time he started his covered work until the Court's decision [in Janus]." In Janus III, *id*., the Seventh Circuit also stated that "the Supreme Court's opinion [in Janus] did not address retroactivity in so many words." The

Seventh Circuit further noted that in decisions after <u>Reynoldsville Casket</u> and <u>Harper</u>, the Supreme Court "has stated that the 'general practice is to apply the rule of law we announce in a case to the parties before us ... even when we overrule a case.'" *Id*. at 360 (citing <u>Agostini v. Felton</u>, 521 U.S. 203, 237, 117 S.Ct. 1997 (1997). The Seventh Circuit, also recognized that "retroactivity and remedy are distinct questions" and, that "the Supreme Court has acknowledged that the retroactive application of a new rule of law does not 'deprive[ ] respondents of their opportunity to raise ... reliance interests entitled to consideration in determining the nature of the remedy that must be provided.'" *Id*. at 362 (quoting <u>James B. Beam Distilling Co. v. Georgia</u>, 501 U.S. 529, 544, 111 S.Ct. 2439 (1991)).

In any event, since it is not clear if the Supreme Court's decision in <u>Janus</u> is to be applied retroactively, as in <u>Janus</u> III, the court finds that the retroactivity issue does not need to be decided in this case. Rather, similar to <u>Janus</u> III, the court has addressed the "broader question whether [plaintiffs] [are] entitled to the remedy [they] seek[]", and whether the union can assert the good-faith defense to §1983 liability in this case. *Id*. at 360-61.

Another recent case also supports SEIU's assertion of the good-faith defense to plaintiffs' claims under §1983. In <u>Hamidi v. Service Employees International Union Local 1000</u>, 2019 WL 5536324, *2 (E.D.Cal. Oct. 25, 2019), the court stated that "[t]he Supreme Court in <u>Janus</u> 'itself did not specify whether the plaintiff was entitled to retrospective monetary relief for conduct the Supreme Court had authorized for the previous forty years.'"

(citing <u>Cooley v. California Statewide Law Enf't Ass'n</u>, 385 F. Supp. 3d 1077, 1081 (E.D.Cal. 2019) (citing <u>Janus</u>, 138 S. Ct. at 2486)). However, the court in <u>Hamidi</u> noted that "the controlling law in the Ninth Circuit", similar to the controlling law in the Third Circuit, *see* <u>Jordan</u>, 20 F.3d at 1275-78, "recognizes a good faith defense in shielding private defendants from liability in §1983 actions." *Id*. The court in <u>Hamidi</u>, *id*. at *3, then concurred with "every district court to consider whether unions that collected agency fees prior to <u>Janus</u> have a good-faith defense to §1983 liability [that] have answered in the affirmative", and stated the standard was, "in the agency fee context, a union's compliance with then-existing law indeed suffices to find good faith." Thus, the court held that since the union's "compliance with what was then the law is sufficient for a finding of good faith", the union could avail itself of the good faith defense to §1983 liability for fair share fees collected before the Supreme Court's decision in <u>Janus</u>. *Id.* at *4.

In short, this court concurs with the numerous cases which have found that unions, such as SEIU, that collected fair-share fees from nonmembers prior to <u>Janus</u>, and pursuant to state law and <u>Abood</u>, can assert the good-faith defense to §1983 liability for the First Amendment claims raised by plaintiffs.

Thus, the court will grant SEIU's motion and dismiss with prejudice plaintiffs' First Amendment claims seeking to hold the union retrospectively liable under §1983. Based on the foregoing, the court finds futility in allowing plaintiffs leave to file a second amended complaint. *See* <u>Janus</u>, III, <u>supra</u>; <u>Diamond</u>, <u>supra</u>; <u>Babb</u>, 378 F.Supp. 3d at 872 ("[E]very district court to

consider whether unions that collected agency fees prior to Janus have a good-faith defense to §1983 liability [has] answered in the affirmative.") (citations omitted).

Plaintiffs next contend that even if SEIU acted in good faith in receiving fair-share fees, it could not have a good faith belief that if Abood was overruled, it could keep the fair-share fees that it previously collected. Thus, plaintiffs assert that they have an equitable claim for the return of the fair-share fees SEIU collected from them before Janus. SEIU counters that plaintiffs have no equitable claim for the return of the fees they paid prior to Janus.

Last month, the Seventh Circuit in Mooney v. Illinois Education Association, 942 F.3d 368, 370-71 (7th Cir. 2019), considered a similar contention and stated:

> [Plaintiff] believes that even if she concedes that a good-faith defense protects the union against a damages award, an equitable demand for restitution cannot be defeated on good-faith grounds. She argues that there is nothing unfair about requiring the union to return monies that, according to Janus, should never have been deducted from her paychecks in the first place. In fact, she concludes, the union would receive a windfall based on its violations of her constitutional rights if no restitution were ordered.

In explaining that although §1983 allows for remedies at law or in equity and that "the district court has discretion to tailor an appropriate remedy for the constitutional violation", the Seventh Circuit in Mooney, *id*. at 370, found that plaintiff's claim was a legal claim and not an equitable claim. In Mooney, *id*., the union argued that plaintiff's suit was "one for damages flowing from a

First Amendment violation", and that "[t]he gravamen of [plaintiff's] complaint is that her First Amendment rights were violated by the fair-share requirement because she was compelled to furnish financial support to union activities with which she disagreed." The Seventh Circuit in <u>Mooney</u> agreed with the analysis of the district court which found that "Plaintiff's claim lies in law rather than equity, and there is consequently no reason to consider whether the good-faith defense applies where the claim is for equitable restitution." <u>Id</u>. The Seventh Circuit then stated that since plaintiff failed to "point to an identifiable fund and show that her fees specifically are still in the union's possession", '[h]er claim is against the general assets of the union, held in its treasury, and can only be characterized as legal." <u>Id</u>. at 371.

SEIU points out that in the present case, "plaintiffs do not have a viable claim for equitable relief because fair-share fees already paid for collective bargaining representation that Local 668 provided to the entire unit." (citing <u>Babb v. California Teachers Ass'n</u>, 378 F. Supp. 3d 857 (C.D.Cal. 2019). SEIU also states that plaintiffs have already received benefits from their collective bargaining representation which was paid for by the fair-share fees they paid and that "it would be inequitable for force [it] to repay plaintiffs' agency fees." (quoting <u>Babb</u>, 378 F.Supp.3d at 876).

As in <u>Mooney</u>, 942 F.3d at 371, the plaintiffs' claim in this case is one for damages and is "against the general assets of the union, held in its treasury", and thus, "can only be characterized as legal." (citing <u>Montanile v. Bd. of Trustees of Nat. Elevator Indust. Health Benefit Plan</u>, —— U.S. ——,

136 S. Ct. 651, 658 (2016) ("Where a plaintiff seeks 'recovery from the beneficiaries' assets generally' because her specific property has dissipated or is otherwise no longer traceable, the claim 'is a *legal* remedy, not an equitable one.'") (emphasis in original) (internal quotation marks omitted)).

Finally, in Diamond, 399 F.Supp. 3d at 385, 389, the court also held that plaintiffs' claims for declarative and injunctive relief with respect to fair-share fees were moot based on the Janus decision and union defendants' compliance with it. (citing collection of cases). *See also* Hartnett, 390 F.Supp.3d at 600-02 (court found claims for declaratory and injunctive relief moot post-Janus since "[p]laintiffs face no realistic possibility that they will be subject to the unlawful collection of 'fair share' fees"). Declaratory judgment is not meant to adjudicate alleged past unlawful activity. There is no question that a plaintiff can request declaratory relief to remedy alleged ongoing violations of her constitutional rights. *See* Blakeney v. Marsico, 340 Fed.Appx. 778, 780 (3d Cir. 2009)(Third Circuit held that to satisfy the standing requirement of Article III, a party seeking declaratory relief must allege that there is a substantial likelihood that he will suffer harm in the future)(citations omitted).

The court concurs with the courts in Diamond and Hartnett, and holds that our plaintiffs' claim for declaratory judgment is moot based on Janus and, based on the undisputed fact that SEIU stopped collecting fair-share fees from state non-union member employees, including plaintiffs, following the Janus decision. *See also* Oliver, 2019 WL 5964778, *7 (holding "Plaintiff's

claims for declaratory and injunctive relief regarding the application of 43 P.S. §§1101.301(18), 1101.401, and 1101.705 suffers from lack of standing and mootness.").

Also, as in <u>Diamond</u>, 399 F.Supp. 3d at 391-93, the court find that the voluntary-cessation exception to the mootness doctrine does not apply in this case since "[t]he circumstances of this case make it clear that the undisputedly wrongful behavior — the collection of fair-share fees — is not reasonably likely to recur [after <u>Janus</u>'s changing of the law and the reason that SEIU stopped collecting fair-share fees from public employees in Pennsylvania]." Indeed, "[c]omplying with a Supreme Court decision cannot be considered 'voluntary cessation.'" *Id*. (citing <u>Lamberty v. Conn. State Police Union</u>, 2018 WL 5115559, at *9 (D.Conn. Oct. 19, 2018) ("explaining that there was 'nothing voluntary' about the union's decision to comply with <u>Janus</u>, as <u>Janus</u> 'announced a broad rule invalidating every state law permitting agency fees to be withheld'"). As such, "compliance with an intervening Supreme Court decision does not implicate the voluntary-cessation exception to the mootness doctrine." *Id.,* at 392.

Thus, the court will grant SEIU's motion and dismiss with prejudice plaintiffs' request for declaratory judgment under 28 U.S.C. §2201.

## III. CONCLUSION

Based on the foregoing reasons, the court will **GRANT** the Rule 12(b)(6)

motion to dismiss plaintiffs' FAC, (Doc. 19), filed by SEIU, (Doc. 25), and

plaintiffs' First Amendment claims and request for declaratory judgment shall

be **DISMISSED WITH PREJUDICE**. Further, this case will be **CLOSED**. An

appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: December 10, 2019**

19-1367-01.wpd